CARL A. MEARS, TRUSTEE v.
GEORGE CONWAY, ATTORNEY GENERAL, ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE NO. 74356

Memorandum filed March 30, 1951.

Carl A. *Mears,* of New Haven, for the Plaintiff.

*O'Keefe, Johnson & O'Keefe,* and *William T. Holleran,* of New Haven, for William T. Holleran, Administrator.

*Albert Miller, Jr.,* of New Haven, for First Church of Christ Scientist of New Haven.

*George C. Conway,* Attorney General and *Raymond J. Cannon,* Assistant Attorney General, of Hartford, for the Defendants.

KING, J. Anna E. Richards died on October 20, 1919, leaving a will dated July 14, 1919, under the first paragraph of which she gave all of her personal property (amounting to over $33,000) to her brother and sole heir-at-law, Alexander B. Richards. Under the second paragraph she gave to him the life use of the residue of her estate (amounting to over $23,000). In the third paragraph this residue, on the death of the life beneficiary, was given to a trustee "to constitute a fund, the income from which fund be equally divided between the First Church of Christ Scientist of New Haven, Connecticut [hereinafter referred to as the New Haven church] and the First Church of Christ Scientist, of Winsted, Connecticut [hereinafter referred to as the Winsted church]."

The life tenant died January 12, 1943, and thereafter the plaintiff was appointed trustee and paid the income equally to the two churches until July 7, 1950, when the Winsted church was legally dissolved and its corporate existence terminated.

This action is brought by the plaintiff, as such trustee, against the attorney general (General Statutes § 212), the administrator of Richards' estate, the administrator c. t. a. de bonis non of the estate of the testatrix, and The First Church of Christ Scientist of New Haven, Connecticut. Basically, the plaintiff seeks a decree, under the cy pres doctrine, authorizing him to pay over to the New Haven church the share of the income given in the will to the Winsted church. If granted, this would result in the receipt of the entire net income of the trust residue by the New Haven church.

All counsel co-operated in simplifying and expediting the presentation of the case, and all allegations but those in paragraphs 18, 19 and 20 of the amended complaint were conceded by all defendants. The defendants the attorney general and the New Haven church also conceded the allegations of paragraphs 18, 19 and 20.

There is little question that the bequest to the Winsted church is such a charitable bequest that the cy pres doctrine, upon an appropriate factual background, could apply to it.

There is no question that the provision of the will bequeathing the income to the Winsted church can no longer be carried out. It is not merely impracticable, but absolutely impossible, to carry out the terms of the will as actually drawn. *Seymour* v. *Attorney General,* 124 Conn. 490, 499; *Second Ecclesiastical Society* v. *Attorney General,* 133 Conn. 89, 94. There is no provision by reverter, residuary clause or otherwise, for any failure of the gift to the Winsted church, so that no such obstacle to the applicability of the cy pres doctrine exists. *First Congregational Society* v. *Bridgeport,* 99 Conn. 22, 31; *Hartford National Bank & Trust Co.* v. *Oak Bluffs Baptist Church,* 116 Conn. 347, 351.

Thus there are really but two basic questions: (1) whether the terms of the will, read in the light of the surrounding circumstances, disclose a general dominant intent to devote the income in question to a religious use to which the expressed intent that it go to the particular Winsted church is secondary, under the rule of such cases as *Waterbury Trust Co.* v. *Porter,* 131 Conn. 206, 215, and *Duncan* v. *Higgins,* 129 Conn. 136, 144; and (2) if so, whether the New Haven church is a proper substitute beneficiary of the income, under the rule of such cases as *Shannon* v. *Eno,* 120 Conn. 77, 89, 90, and *Seymour* v. *Attorney General,* supra. The second question actually need not be answered unless the first is determined in the affirmative.

From the foregoing concessions, the depositions, and the testimony of Mr. Sanford and Mrs. Iverson, it appears that the testatrix attended the Episcopal church in West Haven until sometime in 1909 or 1910 when one Charles Cullen Oran, a neighbor, had become very much interested in Christian Science and in the New Haven church. Through him, his wife (now the deponent Grace C. Huntington) and the testatrix became interested in, and thereafter regularly attended, that church. The testatrix continued this attendance with regularity, except for summers spent at Torringford, when she regularly attended the Winsted church, until her death. She subscribed to the usual Christian Science periodicals. These included the Christian Science Quarterly, which contained lessons involving the reading and study of prescribed selected passages from the Bible and from "Science and Health." She often studied these lessons in company with the Orans.

She was apparently devoted to the Christian Science religion to the exclusion of any other, but she never, however, joined either the New Haven or the Winsted church, although she was a liberal and regular contributor to each. Whether she had ever been a member of the Episcopal church, and, if so, whether she retained her membership therein, did not appear.

There was evidence in the depositions of Mrs. Huntington, Mr. Estes and Mrs. Clark that the testatrix had a deep affection for the Winsted church and was interested in seeing it grow and contributed liberally to its building fund. From this, the administrator c. t. a. d. b. n. of the testatrix's estate argues that her intent was to benefit the Winsted church, as a particular institution, as distinguished from a general intent to benefit Christian Science, as a religious faith, to which the intent to benefit the Winsted church was secondary. In further support of this claim he points out that of a gross estate of over $56,000, paragraph one of the will bequeathed a total of over $33,000 outright to the aforesaid Alexander B. Richards in addition to his aforesaid life estate in the entire residue.

Each local Christian Science church is legally an independent corporate entity. However, there is some restriction on the style of name to be adopted by a local church, and rigid restrictions are placed on its right to use copyrighted material issued by "The Mother Church," which is located in Boston and is legally known as "The First Church of Christ, Scientist." These regulations are obviously reasonable and necessary in order that the true tenets of the faith may not be changed or distorted by individual churches styling themselves Christian Science churches. See the by-laws of the Winsted church.

There is nothing in this form of organization which would be indicative that a gift to one individual Christian Science church manifested a dominant general intention to make a gift for the general advancement of the Christian Science faith to which the intent to benefit the named donee church was subordinate.

Had the decedent had this over-all general interest in Christian Science, as such, as distinguished from an interest in these two churches as particular entities, it is difficult to see why she never joined any Christian Science church.

Apparently she was a woman of broad Christian principles, free from any denominational bias. This is indicated by her

ready transition from attendance at the Episcopal church to at-
tendance at the Christian Science church. The whole evidence
seems to the court to indicate that this testatrix was a Christian
in a fine, broad, unbiased sense; that she was fond of her friends
who attended the New Haven and Winsted churches; that the
welcome she received at both churches made an appeal to her
and won her heart; and that she wanted to help these two in-
stitutions as particular institutions which had brought much
happiness into her life. She was familiar with the organization
of the Christian Science church, including the status of an
individual church and its relationship with The Mother Church,
as hereinbefore outlined. Yet she drew her will making as
beneficiaries two separate corporate entities, and not the central
denominational organization. Neither did she impose any re-
strictions as to the use to be made by the Winsted church of the
trust income. *Duncan* v. *Higgins,* 129 Conn. 136, 144. Indeed
no claim has been made that the cy pres doctrine should be in-
voked to provide that the income be given to the central Chris-
tian Science organization or to any substitute beneficiary other
than the New Haven church.

There is a claim on behalf of the New Haven church that the
testatrix would have preferred the New Haven church to the
heirs-at-law of her brother, Alexander B. Richards. Except
for him it is probable that they were pretty much, if not en-
tirely, the same persons as her own next of kin, and consisted of
forty second cousins. It is unlikely that this claim is sound,
since Alexander B. Richards was given outright over half of
her property (besides the life estate in the residue), and as far
as appears the property given him outright went to his heirs-
at-law on his death, and this the testatrix must have contem-
plated would be likely to occur. But in any event the testatrix'
preference in that respect is not at all the question. As re-
peatedly pointed out in our cases, the applicability of the cy
pres doctrine depends upon proof of a general, dominant chari-
table intent to which the particular expressed intent that it go
to the Winsted church is secondary. The court is unable to find
that this proof has been made. *Duncan* v. *Higgins,* supra;
*Waterbury Trust Co.* v. *Porter,* 131 Conn. 206, 215.

It follows that this income bequeathed to the Winsted church
is, and since July 7, 1950, has been, intestate property in the
testatrix' estate, and that on that date one-half of the corpus of
the trust fund became intestate property.

It may be added that even if the foregoing general intent had been found proven (and it was not), it was not proven that the New Haven church was a proper substitute beneficiary. The mere fact that it was one of two beneficiaries of the trust in the residuum does not indicate that the testatrix intended the whole amount to go to it, under the cy pres doctrine or otherwise. Neither does the fact that a single fund with two beneficiaries was created, presumably to avoid the investment and accounting disadvantages of two separate small trust funds. Furthermore, it is the general, settled rule of law that where a bequest or devise which lapses or is void is part of the residue, it passes as intestate property. Cleaveland, Hewitt & Clark, Probate Law & Practice, § 456. There is no warrant in fact or on principle for finding proven any intent that the New Haven church was a proper substitute beneficiary even had the cy pres doctrine been applicable so that a proper substitute beneficiary should be sought out. This is another, independent ground for the decision reached in this case.

The question of allowances for counsel fees remains to be noted. Counsel agree that the trustee's fees would be allowed in the Probate Court as an administrative expense of the trust (see *Beardsley* v. *Merry*, 17 Conn. Sup. 44) and consequently no allowance is claimed here. No claim is made by counsel for the New Haven church, presumably because he is an associate in the office of the trustee. No claim is made by counsel for the administrator c. t. a. d. b. n. because, the fund having been held intestate, his compensation will also be allowed in the Probate Court. The attorney general has asked for an allowance of $150, which all counsel agree, and the court finds, is entirely reasonable.

Judgment may enter for the defendant Holleran, administrator c. t. a. d. b. n., of the estate of Anna E. Richards, deceased, that the one-half share of the corpus of the trust fund given to the Winsted church is, and since July 7, 1950, has been, intestate property undisposed of by the will of Anna E. Richards and that it, together with the net income on said share accruing since July 7, 1950, is intestate property in her estate, and that the foregoing allowance of $150 be made to the attorney general for the use of the state.

. Counsel may prepare a judgment file pursuant to the provisions of Practice Book § 200.