THE HOWOOD HOUSE, INC. *v.* THE TRUSTEES OF DONATIONS AND BEQUESTS FOR CHURCH PURPOSES, INC., ET AL.

SUPERIOR COURT HARTFORD COUNTY FILE No. 140916

Memorandum filed April 4, 1967

*Robinson, Robinson & Cole,* of Hartford, for the plaintiff.

*Pelgrift, Dodd & Stoughton,* of Hartford, for the named defendant.

*Carl D. Eisenman* and *David B. Beizer,* assistant attorneys general, for the defendant Harold M. Mulvey.

*Shipman & Goodwin,* of Hartford, for the defendant Hartford Hospital.

*Howard, Kohn, Sprague & FitzGerald,* of Hartford, for the defendant Connecticut Bank and Trust Company, executor and trustee under the will of Emily M. W. Peabody.

*Goldfarb & Spellacy,* of Hartford, for the defendant Martin H. Peabody, executor under the will of Douglass W. Peabody.

KLAU, J. Emily M. W. Peabody died a resident of Glastonbury, Connecticut, on September 6, 1932, at the age of fifty-one or fifty-two years, leaving a will dated August 27, 1932. Under article 1 of the will, she directed that she be buried next to her father's grave in St. James Cemetery in said town of Glastonbury. Personal bequests were made under article 2 of the will to her cousin Alice Welles, to whom she also bequeathed the sum of $3000 (article 4); household effects were bequeathed to the Taylors of West Hartford (article 3); and $1000 to her nephew Hardin Peabody, son of her brother, Douglass W. Peabody of Atlanta, Georgia (article 5).

The said Hardin Peabody is also known as Martin H. Peabody, a defendant and executor of the estate of his father. Under article 6, she bequeathed the sum of $1000 to her niece Mary Josephine Smith, the daughter of her said brother, of Atlanta, Georgia. Under article 7, the testatrix bequeathed the sum of $5000 to the named defendant in perpetual trust to pay the net income thereof for the benefit and/or support of St. James' Parish, located in the town of Glastonbury, in memory of her mother and grandfather. Under article 8, she bequeathed the sum of $5000 to defendant The Protestant Episcopal Church in the diocese of Alabama for the benefit and/or support of Trinity Church, Mobile, Alabama. Under article 9, she gave and bequeathed the sum of $5000 to the plaintiff, Howood House, Inc., a corporation of the state of Connecticut located in the city of Hartford, in trust, however, to invest and reinvest the same and to expend the net income thereof to defray the expenses, in whole or in part, of any girls and/or women who are patients of any institution maintained by said corporation but who are unable to pay their own expenses, either in whole or in part.

Under article 10, all the rest, residue and remainder of her estate the testatrix bequeathed to The Phoenix State Bank and Trust Company as trustee (the defendant The Connecticut Bank and Trust Company is successor by merger to said Phoenix State Bank and Trust Company), to pay the income thereof to her brother, Douglass W. Peabody, during his life. On the death of her brother she directed that the trust should terminate, and further directed that the trustee divide the trust fund into three equal parts and pay over said parts as follows: One-third to the defendant The Trustees of Donations and Bequests for Church Purposes, to be added to the principal of the trust fund provided

for under the terms of article 7, to be managed, controlled and finally disposed of in the same manner and as fully as though it had been originally incorporated in and made a part of said trust fund. One-third to the defendant The Protestant Episcopal Church in the diocese of Alabama, to be added to the principal of the trust fund provided for under the terms of article 8, to be managed, controlled and finally disposed of in the same manner and as fully as though it had been originally incorporated in and made a part of said trust fund. The remaining one-third to the plaintiff Howood House, Inc., to be added to the principal of the trust fund provided for under the terms of article 9, thenceforth to be held, managed, controlled and finally disposed of in the same manner and as fully as though it had been originally incorporated in and made a part of said trust fund.

The life tenant and only heir at law of the testatrix, Douglass W. Peabody, died a resident of Atlanta, Georgia, on December 16, 1955. His son, the defendant Martin H. Peabody (Hardin Peabody) is the duly qualified executor under the will of Douglass W. Peabody. The Phoenix State Bank and Trust Company, the executor under the will of the testatrix, paid to the plaintiff $5000 pursuant to the aforesaid article 9 and the plaintiff has administered the same pursuant to said article. Until the dissolution of the plaintiff on June 27, 1963, following the death of the life tenant, the trustee distributed to the plaintiff one-third of the principal of the trust and plaintiff added the same to the principal of the trust established under article 9. At the present time, the principal of said trust amounts to approximately $40,000.

The plaintiff was incorporated as a charitable corporation without capital stock on November 12,

1930, and was dissolved on June 27, 1963, pursuant to a certificate of dissolution filed with the secretary of the state. Prior to its dissolution, a purpose of the plaintiff was "to erect and/or maintain a home or building for the purpose of offering girls and women accommodations for convalescence at a nominal cost." Howood House, Inc., Arts. of Assn. art. 2, ¶ 3. Paragraph sixth of article 2 of the articles of association reads as follows: "Sixth: Upon any dissolution of said corporation, the assets of said corporation shall be transferred to The Hartford Hospital, or its successor, to be held as a permanent fund as a memorial to Edmund G. Howe, William J. Wood and Frances Howe Wood, the income to be used for the general uses and purposes of said hospital. It is the hope of the subscribers that said income will be used by said hospital in a manner to continue as nearly as possible the purposes of this corporation." Upon its dissolution, the plaintiff transferred to the defendant Hartford Hospital its real estate and certain other property which it owned outright, pursuant to said paragraph sixth. From and after its dissolution, the plaintiff has maintained no institution for girls and/or women patients. From and after its dissolution, the plaintiff has continued to hold the property comprising the trust established pursuant to articles 9 and 10 of the will of Emily M. W. Peabody and has accumulated the income thereon and continues to do so.

Plaintiff seeks a decree (a) determining the construction of said will, and (b) directing to whom and in what proportions the plaintiff is to distribute the principal of said trust, together with the income thereof accumulated to the date of such distribution.

Very little evidence was introduced concerning the life and background of the testatrix, Emily M. W.

Peabody. It was stipulated that an affidavit filed by the defendant Martin Peabody, nephew of the testatrix, might be considered by the court. The affidavit indicates that his father (Douglass) was the son of Douglass Carnes Peabody and Mary Jane Welles Peabody; that his grandfather, Douglass Carnes Peabody, was an Episcopal minister and was the first rector at St. James' Parish in Glastonbury, Connecticut. The grandfather subsequently served Episcopal churches in Pittsburgh, Pennsylvania; Rockford, Illinois; and the Trinity Church, located in Mobile, Alabama. The father of the defendant Martin Peabody and his aunt, the testatrix, grew up in Mobile, Alabama, and the father attended secondary school and the university there. After his graduation, the father moved to Atlanta, Georgia. Shortly thereafter, the grandfather died and the testatrix and her mother returned to Glastonbury, Connecticut. She continued living there until she died. She continued to attend St. James' Church in that town. While the testatrix and her family lived in Mobile, the family life was an extremely happy one.

The plaintiff was originally organized to operate as a convalescent home for females. The first admission of a patient was on April 27, 1931, to the so-called Woods Home at 675 Asylum Avenue, which had been conveyed to it by Ethel W. Thomas as a memorial to her parents, who had owned and occupied the home. The average daily number of patients was approximately thirteen; total admissions in 1931 were thirty-eight; the number discharged was thirty-five. On January 28, 1932, a Miss Peabody of Glastonbury was admitted. The records indicate that she was discharged on February 2, 1932. The reason for her admission was indicated as fatigue. From the evidence, this appears to be the only connection that the testatrix,

assuming she was the Miss Peabody referred to, had with the plaintiff. Her will, executed on August 27, 1932, seems to bear out the probability that she was for a few days in the latter part of January, 1932, a patient of the plaintiff.

The primary reason for the dissolution of the plaintiff was its inability to continue to operate the Howood House with the funds on hand. Being unable to use any of the principal, income proved insufficient to carry out its purposes. During the 1930's, the plaintiff operated what was termed a convalescent home confined to females, but the operation of it was of short duration. With the development of Blue Cross, and of other benefits arising out of employment agreements, and the creation of more modern convalescent facilities, the character of the plaintiff's operations changed so that during the 1940's and 1950's the length of stay of patients became much longer, until the plaintiff gradually developed into an old ladies' home, many of the patients being terminal cases. The situation finally developed so as to make it impracticable to continue even along these lines. The trustees voted to dissolve the corporation, and its real estate and other assets not specifically held in trust were turned over to the Hartford Hospital in accordance with the sixth paragraph of article 2 of the articles of association.

The defendant Hartford Hospital and the attorney general claim that the bequest of the plaintiff was an absolute gift and therefore could be transferred by it to the Hartford Hospital. The said defendants further claim that if the bequest is not an absolute gift, it nevertheless constitutes a charitable trust and should therefore upon dissolution be assigned to the defendant hospital under the doctrine of approximation or cy pres. The evidence

indicates that the Hartford Hospital is the largest general hospital in the city of Hartford and has recently constructed a building for the continuing care of postoperative convalescents, open to both sexes. The directors of the defendant hospital, if the doctrine of cy pres is applied and the fund created under the will of the testatrix is transferred to it, will use such income for the convalescent care of needy females alone, designating it as the Howood House Fund in memory of the testatrix, thus carrying out one of the purposes for which the plaintiff was organized and fulfilling the intent of the testatrix.

The allegations of the complaint were admitted by all of the defendants. The question is whether the bequest to the plaintiff is such a charitable bequest that the cy pres doctrine, upon an appropriate factual background, could apply to it. There is no question that the provision of the will bequeathing the income to the plaintiff can no longer be carried out. It is not merely impracticable, but by its dissolution the plaintiff no longer is engaged in any charitable work. There is no provision by reverter, residuary clause, or otherwise, for any failure of the gift to the plaintiff, so that no such obstacle to the cy pres doctrine exists. The doctrine applies in situations where a testator has evidenced a dominant intent to devote his property to some charitable use but the circumstances are such that it becomes impossible to follow the particular method he directs, and the courts then sanction its use in some other way which will, as nearly as may be, approximate his general intent. See *Duncan* v. *Higgins,* 129 Conn. 136, 144; *Waterbury Trust Co.* v. *Porter,* 131 Conn. 206, 215; *Shannon* v. *Eno,* 120 Conn. 77, 89; *Mears* v. *Conway,* 17 Conn. Sup. 319, 321. Thus there are really but two basic questions: (1) Whether the terms of the will, read in the light

of the surrounding circumstances, disclose a general dominant intent to devote the income in question to a charitable use, to which the expressed intent that it go to the particular donee (the plaintiff) is secondary, and, if so, (2) whether the defendant Hartford Hospital is a proper substitute beneficiary of the trust. See *Shannon* v. *Eno,* supra.

The cy pres doctrine is applicable if the testatrix manifested a dominant general intention to devote the property to charitable purposes. Is that general intent present here? The defendants Hartford Hospital and attorney general maintain that it is and that the Hartford Hospital, under the doctrine of approximation, should be the beneficiary of the trust. The defendant Martin H. Peabody contends that the bequest was to defray the expenses of needy females who use the facilities of Howood House, that the dominant intent of the testatrix was to benefit that particular institution, and that there was no general intention to devote the property to charitable purposes. Therefore, he claims, an intestacy has arisen and the funds created under article 10 (c) of the will must go to the only heir of the testatrix, the estate of Douglass Peabody, of which the defendant Martin H. Peabody is the executor.

The general rule of construction is succinctly stated at 4 Scott, Trusts § 397.3, p. 2790: "Where a testator devises or bequeaths property to a charitable corporation to be applied to a particular charitable purpose, it is to be inferred that the application of the property to the designated purpose is the testator's primary intention, and that the choice of the organization to make the application is secondary." Here, the testatrix specifically and significantly set forth in her will her particular charitable purpose. That purpose was and is to benefit "girls and/or women who are patients of *any* institution

maintained by said corporation but who are unable to pay their own expenses, either in whole or in part" (italics supplied). By this clause, the testatrix did not intend to benefit and support the corporation, Howood House, Inc., at least directly. The corporation was designated as trustee, and the patients of any institution maintained by the corporation were beneficiaries. The girls and/or women mentioned were the objects of the testatrix' charitable bounty. They were the class of persons whom Emily Peabody intended to benefit, i.e. indigent, convalescing girls and/or women. The gift was to the object of the plaintiff's work and not to the plaintiff itself. The case of *Industrial National Bank* v. *Drysdale,* 83 R.I. 172, cited by the defendant Peabody, does not present a factual situation similar to the one to be found here. In that case, a particular mission with whose management the testator was very friendly was made the object of his charity. His purpose was not to aid the poor generally.

Had the testatrix' primary objective been to benefit the corporation itself, she would have provided that the trust be used for the benefit and/or support of the particular corporation. In this regard, note and compare articles 7 and 8 of the will with article 9. In the former articles, the income is to be used for the "benefit and/or support of" the parish and the church respectively. It would have been a simple matter for the testatrix to use the same wording in article 9—"to pay over the net income thereof to or expend the same for the benefit and/or support of" Howood House, Inc. The difference in the language used here is significant. By specifically naming the class of persons to be benefited, i.e. needy, convalescing female patients, the testatrix demonstrated her overall purpose and manifested her general charitable intention. The gift was for the purpose and not for the person.

Testimony presented at the trial of this case indicates that the testatrix may herself have been a convalescing patient at Howood House. Accepting this fact, it clearly follows that the object of her bounty in setting up the trust was to benefit other women and girls who might one day be similarly situated. That these beneficiaries be cared for at the particular institution named Howood House was not important to Emily Peabody; rather, financial help to penurious women or girls was her object. How else explain the fact that the trust specifically states that the beneficiaries are to be "patients of *any institution* maintained by said corporation" (italics supplied)? Thus, it was not the institution that the testatrix sought to benefit but rather the class of persons named as the beneficiaries of the trust. The institution, Howood House, Inc., was simply her choice of a vehicle or mode to effectuate her gift. This vehicle or mode per se was not the object of her bounty. See *Rhode Island Hospital Trust Co.* v. *Williams,* 50 R.I. 385, 392; *Ely* v. *Attorney General,* 202 Mass. 545; *Norris* v. *Loomis,* 215 Mass. 344; note, 74 A.L.R. 671, 676.

Further evidence of the testatrix' general charitable intent is demonstrated by the fact that of the six pecuniary bequests provided for in the will, three of the bequests go to charities. The three noncharitable bequests set forth in articles 4, 5 and 6 of the will total $5000. The three charitable bequests are each in the amount of $5000. In the first part of the residue clause of the will, the testatrix set up a trust for the life use of her brother, but after his death her entire estate was to be divided among the three charities. Again, the situation is not dissimilar to that expressed in *Ministers Benefit Board* v. *Meriden Trust Co.,* 139 Conn. 435, 447, where the court said: "It is thus seen that the ultimate devotion of his entire estate, other

than the small fraction used to provide for the individual legacies referred to, was completely charitable in character. He wished to give practically everything he owned to aid the varied undertakings of charity, such as the relief of the poor, the comfort of the suffering, the education of youth, the furtherance of religion and the advancement of the welfare of boys. The extent of his generosity is a circumstance tending to manifest a general charitable intent. *Waterbury Trust Co.* v. *Porter,* 131 Conn. 206, 216 . . . ; *Hartford National Bank & Trust Co.* v. *Oak Bluffs First Baptist Church,* 116 Conn. 347, 354 . . . ." Here, the testatrix' assets are bestowed on not one but three charities. The extent of her commitment is illuminating and convincing in establishing her general charitable intent.

The defendant Martin H. Peabody, executor, argues that the testatrix had personal contact with the charities and therefore she specifically wished to benefit them. Unquestionably she intended to benefit the charities, otherwise she would not have provided for them. She had to know of the existence of the charities in order to make such a provision. Further, the charities may have been selected because she had personal contact with them (although in the case of Howood House, Inc., the evidence merely discloses that someone of the same last name as the testatrix stayed at the institution for a total of only five days). If the testatrix' method for selecting the charities was because of personal contact, this in no way negates her general charitable intent, demonstrated by the fact that she selected three charities as the major object of her benefaction.

The very existence of the residue clause in the will is more evidence of the testatrix' deliberate

intent to devote her entire estate to charitable purposes and to avoid intestacy. She makes no further bequests for her relatives other than providing the life estate for her brother. As was stated in *Citizens & Manufacturers National Bank* v. *Guilbert,* 121 Conn. 520, 526: "A questioned paragraph is to be so construed as to harmonize so far as possible with the other provisions of the will and to carry out the underlying intent of the testator as disclosed by the entire will. *West Haven Bank & Trust Co.* v. *McCoy,* 117 Conn. 489, 491 . . . . Certainly this will nowhere manifests any wish or intent to benefit the testator's relatives further than the specific gifts provided for each. *Brinsmade* v. *Beach,* 98 Conn. 322, 331 . . . . The presence of the general residuary clause shows an intent to avoid partial intestacy, and in case of doubt the provisions of a will are to be interpreted, if they reasonably may be, so as to obviate it. . . ." It is noted that article 10 of the will of the testatrix specifically directs the residue after the life estate of her brother to be divided into three equal parts. There is no provision in the event of the failure of one of the charities to take its share. There is no provision for the other charities to divide that share in the event of such a failure. It is submitted that in order to avoid partial intestacy, this will should be reasonably construed in the light most favorable to the defendant Hartford Hospital. If the doctrine of approximation is applicable and this defendant receives the benefits of the trust, partial intestacy is obviated in accordance with Connecticut case law.

The Hartford Hospital and the attorney general further contend that the line of cases beginning with *Bridgeport Trust Co.* v. *Marsh,* 87 Conn. 384, 397, followed by *Bridgeport-City Trust Co.* v. *Bridgeport Hospital,* 120 Conn. 27, and culminating

in *Connecticut Children's Aid Society* v. *Connecticut Bank & Trust Co.*, 147 Conn. 554, is applicable here. As was said in the last cited case (p. 560): "After the merger of the two organizations, although there will be a formal cessation of the plaintiff's activities as a corporate entity, the charitable purposes which the bequest was intended to accomplish will continue without abatement." While there is no merger here, the dissolution is similar to that in *Bridgeport-City Trust Co.* v. *Bridgeport Hospital,* supra. These defendants therefore submit that by operation of law the assets of the trust pass to the Hartford Hospital, since the testatrix' charitable purpose as intended will continue without abatement. By following the plan set forth in paragraph sixth of article 2 of the articles of association, the assets of the corporation follow the testatrix' true purpose. The purpose of the corporation and the class that the testatrix had in mind, and not the institution itself, should receive the benefit of her trust.

The same result, however, can be arrived at by the application of the doctrine of cy pres. The Hartford Hospital is a proper substitute beneficiary of the income under the doctrine of cy pres. *Shannon* v. *Eno,* 120 Conn. 77. The articles of association of the plaintiff itself provide for the continuity of the plaintiff's activities at the Hartford Hospital. The continuing care unit opened recently there provides for the convalescent care of postoperative cases. The purpose of the unit is convalescence and rehabilitation, and all patients are handled on a short-term basis. The continuing care unit of the Hartford Hospital very closely approximates the type of institution that the plaintiff was at the time the testatrix made her will, and prior to the time that lack of funds and obsolescent facilities made the plaintiff inoperable as a true convalescent home

as originally intended. See *Kensington Hospital for Women Case*, 358 Pa. 458. The defendant Hartford Hospital is a proper recipient for the application of the doctrine of cy pres.

A decree may enter that the plaintiff pay over the funds created under article 9 of the will of the testatrix, Emily M. W. Peabody, and under article 10 (c) of the will of Emily M. W. Peabody to the Hartford Hospital to be held by it as The Emily M. W. Peabody Free Bed Fund, the income from which shall be used toward the care of girls and/or women who are convalescent patients in said institution and who are unable to pay their own expenses either in whole or in part.

Plaintiff's counsel is requested to prepare a judgment file in accordance with this opinion. All counsel are requested to appear at a suitable time for the determination of counsel fees.