WARD *v.* WORTHINGTON ET AL.

326

(Decided January 30, 1928.)

*Mr. W. C. Shepherd, Mr. Harry S. Wonnell,* and *Mr. M. O. Burns,* for plaintiff.

*Messrs. Shotts & Millikin* and *Mr. Howard H. Delp,* for defendants.

MILLS, J. This cause is here on appeal from the court of common pleas of Butler county, Ohio, and involves the construction of a will.

The testatrix, Susan A. Kennedy, died March 29, 1918. Her will, dated August 24, 1903, and the codicil thereto, dated February 3, 1913, gave to her husband, Albert Kennedy, a life estate in all her property, with full power of disposal. At his death, bequests aggregating $1,100 were to be paid to various charities, and about $9,200 to various relatives of hers and of her husband.

Item 3 of the codicil contains the following specific devise:

"My residence No. 221 North Third street being situate on lots 153 and 154 in said city of Hamilton, Ohio, is to pass to and vest in my niece Elizabeth Wasson for and during the period of her natural life, and she shall not be charged any rent therefor, * * * and upon her death, I give and devise my said residence property to the Westminster Presbyterian Church of Hamilton, Ohio, to be known as the Albert and Susan Kennedy Memorial, and to be used for a parsonage for said church on the condition and providing that the authorities of said church permit the picture of my husband's mother, our daughter's portrait and the big clock now in the house, to remain in a proper place in said residence."

Item 6 of the codicil reads as follows:

"Item Sixth: All the residue of my estate, real and personal of every kind and nature, I give, bequeath and devise to the Westminster Presbyterian Church of Hamilton, Butler County, Ohio, and to

the Children's Home of Hamilton, Butler County, Ohio, to be equally divided between them."

Item 7 of the codicil contains the following provision:

"I authorize and empower my said executor to sell and convert into money any or all of my property real and personal for the purpose of paying debts or expenses of my estate, costs of administering thereon, and any legacy or legacies bequeathed and devised by me in my will and testament."

The only property owned by the testatrix at the time of her death was an undivided half interest in the realty described in item 3 of the codicil. Albert Kennedy, husband of the testatrix, died January 6, 1920, without disposing of the property in any manner. Elizabeth Wasson is now dead, the residence has been sold in partition, and the net proceeds of the sale of this half interest amount to $5,181.69.

These proceeds are claimed by the Presbyterian Church of Hamilton, as successor to the rights of the Westminster Presbyterian Church. They are claimed on behalf of the general legatees, on the ground that the special, devise was void. And the Children's Home maintains that, if the special devise was void, the proceeds should be distributed as residuary property under the provisions of item 6 of the codicil.

It is variously urged that this devise was upon a condition subsequent, whose impossibility of performance vests a title absolute in the devisee; that the devise is void because the devisee was no longer in existence at the time the devise was to take effect; and that the devise is void because it was upon a trust incapable of performance.

On March 6, 1918, the congregations of the West-
minster Church and of the First Presbyterian
Church of Hamilton, Ohio, both being religious cor-
porations organized under the laws of Ohio, held
separate congregational meetings at which, pursu-
ant to Section 10004 of the General Code, they sep-
arately agreed upon a plan for consolidation. The
agreement of consolidation, which was comprehen-
sive and specific, was in writing. It provided, among
other things, that "a combined congregational
meeting be held one week after its ratification"; that
the name of the consolidated church should be the
Presbyterian Church of Hamilton, Ohio; and that
the several bodies of elders, deacons, and trustees,
theretofore separately representing the two
churches, should serve in the same respective ca-
pacities as representatives of the consolidated
church, with full authority to choose their own offi-
cers and to decide upon "the temporary place of
worship of the united church," all until such time
as the constitution of the united church should come
into full operation.

Pursuant to the foregoing agreement, and in con-
formity with Section 10005 of the General Code of
Ohio, a combined congregational meeting was held
on March 13, 1918, when the agreement was unani-
mously ratified and confirmed. At this meeting,
which was held in the church rooms of the First
Presbyterian Church, the combined congregations
tendered the pastorate to Rev. Arrick, theretofore
pastor of the First Presbyterian Church, who ac-
cepted the charge, subject to the approval of the
presbytery.

In compliance with Section 10006 of the Ohio Gen-

eral Code, the agreement of consolidation was certified by the clerk of the meeting of the "united corporations" and was, on May 6, 1919, filed with the secretary of state. This certification declares that the agreement was duly approved by the "united corporations" on March 13, 1918.

Section 10006, General Code, reads:

"If, at the first meeting of the united corporations, the proceedings and acts of the several churches, societies, and parties thereto are submitted to and approved by it, and a board of trustees, directors, or other officers are chosen in accordance with the terms of agreement, the clerk or secretary of the meeting shall certify such approved agreement or terms. of union, and file it in the office of the secretary of state, whereupon the several churches, societies or associations, parties thereto, shall be one corporation, possessing within this state all the rights, privileges, and franchises, and subject to all the restrictions, disabilities, and duties, of such new corporation."

Section 10007 of the General Code reads:

"Such new corporation, with its officers and chosen representatives, shall succeed to, and be invested with, all the right, title and interest in and to every species of property, and all the rights, privileges and franchises of each of the churches, societies or associations, parties to the agreement, without any other act, conveyance or transfer; and such new corporation shall hold and enjoy these with all the rights pertaining to such property, franchises, and trusts, and be subject to all the debts, liabilities, and obligations, in the manner and to the. extent as any of the churches or societies parties thereto."

In *People, ex rel. N. Y. Phonograph Co.,* v. *Rice,* 57 Hun, 486, 11 N. Y. S., 249, the court, discussing a consolidation of business corporations under a New York statute similar to this, said:

"It is true that the two consolidating bodies were corporations in full life, until they formed * * * the new corporation. Then they ceased * * * to exist. It was for this very purpose that they executed the agreement; the purpose to end their own existence and to form a new person. Whenever they form the new corporation their own corporate existences cease. The new company is not a partnership of the two old companies."

In *People* v. *N. Y., C. & St. L. Rd. Co.,* 129 N. Y., 474, 29 N. E., 959, 15 L. R. A., 82, the court refers to "the general current of authority to the effect that statutes for the consolidation of domestic corporations are to be treated as acts of incorporation, and that on consolidation being effected under their provisions, the constituent companies, unless such an intention is excluded by the language of the statute, are deemed to be dissolved, and their powers and faculties to the extent authorized become vested in the consolidated company as a new corporation created by the act of consolidation."

In *Gladding* v. *St. Matthew's Church,* 25 R. I., 628, 57 A., 860, 65 L. R. A., 225, 105 Am. St. Rep., 904, 1 Ann. Cas., 537, the testatrix left a house and lot to Saint Ann's Church, organized as a religious corporation. This church was subsequently consolidated with the St. Matthew's Church. The court held that the original legatee named in the will ceased to exist when the new corporation was formed.

In *Trustees of Presbyterian Church* v. *Katsianis*, 78 Ind. App., 406, 134 N. E., 684, the testator left a legacy to the Second Presbyterian Church of La Porte, for the purpose of the support of the pastor of said church, and the supplying of all pews therein to poor people. Before the death of the testator, the Second Presbyterian Church united with the First Presbyterian Church as a new corporation, called the Presbyterian Church of La Porte. The court held that as a result of the consolidation each of the constituents ceased to exist; that there was no identity between the consolidated church and the church named as legatee; and that the consolidated church was not entitled to receive the bequest.

The claim is made in the case now before us that the Westminster Church did not cease to exist until the agreement of consolidation was filed with the secretary of state on May 6, 1919. It appears to us that the filing of this paper was a mere ministerial act, the postponement of which did not prolong the life of the corporation. The statute (Section 1006, General Code) says that "the clerk or secretary of the meeting shall certify * * * and file" the agreement. This meeting was held on March 13, 1918. Its action constituted the sole authority for the certification and the filing. From the date of that meeting, and as the result of that action, the Westminster Church ceased to exist. It could not function thereafter as a corporation. We hold, therefore, that this devise never vested in the Westminster Church, because it was no longer in existence when the testatrix died on March 29, 1918.

What was the nature of this devise, and what shall be done with the proceeds of this sale?

In the construction of a will, it is well settled as a paramount rule that the intention of the testator, as gathered from the whole will, must control, when such intention is not in conflict with the law or against public policy. *Carter* v. *Reddish,* 32 Ohio St., 1.

What was the intention of the testatrix regarding this property? She desired that "her residence" go to the "Westminster Presbyterian Church * * * to be known as the Albert and Susan Kennedy Memorial, and to be used for a parsonage for said church." But her residence cannot be used as a parsonage for that church, for the church no longer exists; it cannot be used as a parsonage for any church; it cannot be used as a memorial; it was not hers to devise nor to impress with a trust; it has been sold, and only half of the proceeds could under any circumstances be available for the purpose of carrying out any *cy pres* trust. Unless the court orders this fund to be used *cy pres,* the trust must fail.

In *Gearhart* v. *Richardson,* 109 Ohio St., 418, 142 N. E., 890, the rule is laid down as follows:

"A charitable trust, capable of being enforced, will not be terminated because of a small change incident to the method of administration, which does not alter the purpose or object of the trust, nor vary the class of beneficiaries, nor divert the fund from the charitable purposes named by the donor."

But this trust is not capable of being enforced without altering the purpose and object which the testatrix had in mind. The testatrix attempted to impress a trust upon land, not upon its value or proceeds. *Board of Education of Incorporated Vil-*

*lage of Van Wert* v. *Inhabitants of Town of Van Wert,* 18 Ohio St., 221, 98 Am. Dec., 114.

In the case of *In re Lyon (In re Merritt's Will),* 173 App. Div., 473, 159 N. Y. S., 951, the testator devised land he did not own, to be used as a public cemetery. The court said:

"The land, which underlay the testator's project, was not his property. * * * There remains nothing but his intention. * * * There cannot be such a cemetery. * * * The testator's vision has vanished."

In *Teele, Trustee,* v. *Bishop of Derry,* 168 Mass., 341, 47 N. E., 422, 38 L. R. A., 629, 60 Am. St. Rep., 401, the court lays down the general rule:

"If a charitable purpose is limited to a particular object or to a particular institution, and there is no general intent, then if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken effect, the doctrine of *cy pres* does not apply, and, in the absence of any limitation over, or other provision, the legacy lapses."

We do not find in this will any general charitable intent. The lack of such intent is emphasized by the specific provisions relative to the family portraits.

Our conclusion is that the devise is void, and that the decedent's interest in the realty became part of the general estate. But we do not agree with the contention that this realty passed to the residuary beneficiaries. Under the rule laid down in *Knepper* v. *Knepper, Ex'r.,* 103 Ohio St., 529, 134 N. E., 476, the testatrix could have made general legacies a charge upon this realty even while it remained sub-

ject to a valid specific devise. Whether she intended to do that is a question not necessary to determine here. She did specifically provide for the sale of "any or all" of her real property for the purpose of paying the legacies. The specific devise is void. The proceeds of the sale of this realty should, in compliance with the express terms of the will, be applied *pro tanto* toward the payment of the legacies.

It is true that in *Koontz* v. *Hubley,* 111 Ohio St., 414, 145 N. E., 590, the syllabus reads as follows:

"The rule of construction applicable to wills, that where legacies are given generally and no fund is provided from which they are to be paid and afterward the residue of the real and personal estate is given in one mass the legacies constitute a charge upon the whole residuary estate, is not absolute. It is to be applied only in those cases where from the terms of the will and a consideration of all the circumstances it is fairly to be inferred that at the time the will was made the testator must have realized that he had no property out of which such legacies could be paid and that satisfaction out of the residuary estate is necessary. *Theobald* v. *Fugman,* 64 Ohio St., 473, 60 N. E., 606, second proposition of syllabus approved and followed."

But the will in the *Koontz case* contained no specific provision making the legacies a charge on any of the testator's realty. While we do not know what the condition of Mrs. Kennedy's estate was at the time she executed the codicil, we feel bound to interpret her will in accordance with its express terms. "Technical rules of interpretation may be resorted to as aids to the construction of a will; but they

cannot control if they are in conflict with the apparent intention of the testator." *Barr* v. *Denney,* 79 Ohio St., 358, 87 N. E., 267.

We hold that the specific devise to the Westminster Church is void, because that church was not in existence at the time the gift was to take effect, and because the trust was impossible of performance; and we hold that the intention of the testatrix requires that the proceeds of sale of her half interest in this realty be distributed pro rata among the general legatees.

*Decree accordingly.*

HAMILTON, P. J., and CUSHING, J., concur.