PEARL DUNCAN ET AL. *v.* EDWIN W. HIGGINS, TRUSTEE (ESTATE OF IRENE E. HARLAND), ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued April 4—decided June 10, 1942.

*Edward G. McKay,* with whom was *Sidney A. Sands,* of the New York bar, for the appellant (named plaintiff).

*Arthur M. Brown,* with whom, on the brief, was *Charles V. James,* for the appellee (defendant First Unitarian Congregational Society).

*Lee R. Robbins* filed a brief as amicus curiae, but did not argue the cause.

MALTBIE, C. J.   Irene E. Harland died at Norwich on January 19, 1925, leaving a will dated January 8, 1925, in which she devised and bequeathed the residue of her estate, real and personal, to a trustee to pay over the income or so much as he might think necessary and such part of the principal as in his discretion he might deem necessary for the maintenance and support of Aline M. Harland, and "upon her death to pay over the principal thereof with accumulations, or so much thereof as may then remain to my said step-brother, Charles L. Andrews, but if he shall not survive her, to pay the same upon her decease to the Second Unitarian Congregational Society of Brooklyn, New York."   Charles L. Andrews died in 1933, before the death of the life tenant in 1939.

The Society had ceased to carry on religious services or to function on January 1, 1925.   On January 14, 1925, it adopted a resolution: "Resolved, that it is the sense of this Society that its aims and purposes can be best served by a union with the First Unitarian Society of Brooklyn and that the officers and trustees of this Society be instructed to take such steps as they may deem necessary to effect such union.   Be it further resolved that such union will carry no obligation to any individual member."   No steps were in fact taken

under the laws of New York to form a union of the two churches. On February 16, 1925, a majority of the trustees of the Second Society filed a petition under § 18 of the Religious Corporation Law of New York in the Supreme Court of that state for a dissolution of the Society. On March 23, 1925, the court ordered that, upon the marshalling and liquidation of its assets and the payment of the balance, if any, to the First Society, the Second Society "be and its corporate existence is hereby dissolved." The assets in the possession of the Second Society were paid to and delivered to the First Unitarian Congregational Society on April 6, 1925, and the order of the court was complied with. The two societies were religious corporations of the same denomination, maintaining houses of worship and doing the usual charitable work of churches in that denomination in the same section of the city of Brooklyn. The First Society has continued to function in the same locality and to carry on that work, including the ministry of the gospel and certain charitable work formerly carried on by the Second Society, and most of the members of the Second Society have become members of the First Society.

The Probate Court ordered that the trustee pay over and deliver the remainder of the fund to the First Society. The plaintiffs, claiming to be heirs-at-law of Charles L. Andrews, appealed to the Superior Court. That court held that any interest which Charles L. Andrews had in the estate was terminated by the fact that he did not survive the life tenant and that the plaintiff Pearl Duncan, whom it found to be his sole heir-at-law, was not, therefore, aggrieved by the order of the court, and it dismissed the appeal. She has appealed to this court.

At the time of the death of the life tenant the Second Society was no longer in existence, and the residue

of the estate could not in any event be paid to it. *Wright* v. *Wright*, 225 N. Y. 329, 337, 122 N. E. 213. The first question presented is, can it be paid to the First Society? Where a gift is made by will to a charitable organization and that organization has ceased to exist, the courts have frequently authorized distribution to another organization, or, where it has merged with another, to the latter. This has been done under the cy pres doctrine or the doctrine of approximation, which may be applied when the impossibility of carrying out the exact intent of a testator exists at his death as well as when it arises subsequently. *Shannon* v. *Eno*, 120 Conn. 77, 87, 179 Atl. 479. The doctrine applies in situations where a testator has evidenced a dominant intent to devote his property to some charitable use but the circumstances are such that it becomes impossible to follow the particular method he directs, and the courts then sanction its use in some other way which will, as nearly as may be, approximate his general intent. *First Congregational Society* v. *Bridgeport*, 99 Conn. 22, 34, 121 Atl. 77; *Shannon* v. *Eno*, supra; *Seymour* v. *Attorney General*, 124 Conn. 490, 498, 200 Atl. 815.

Ordinarily where an organization to which a charitable gift or devise is made is incapable of taking it, the question whether its payment to another organization will be permitted is determined upon the basis of the applicability of the cy pres doctrine or doctrine of approximation; and that doctrine will be applied only where the court finds in the terms of the will, read in the light of surrounding circumstances, a general intent to devote the property to a charitable use, to which the intent that it go to the particular organization named is secondary. Zollmann, Charities, § 145 et seq.; 3 Scott, Trusts, p. 2078; 3 Pomeroy, Equity Jurisprudence (4th Ed.), p. 2308; 2 Perry, Trusts (7th

Ed.), § 726; note, 74 A. L. R. 671. As Bogert points out, the courts have reached diffcrent decisions on facts essentially similar; 2 Bogert, Trusts & Trustees, § 436; the variance, however, has not bcen due to any questioning of thc soundness of the principle but to its application to particular facts. Where the organization named in the will as the recipicnt of the testator's bounty has ceased to exist, the text-writers referred to have treated upon the basis of the cy pres doctrine the question whether the property could be paid to another corporation exercising similar functions, and, in the absence of any indication of intent other than one to benefit the particular organization named, it has been held that the gift lapsed. See *Morristown Trust Co.* v. *Morristown,* 82 N. J. Eq. 521, 523, 91 Atl. 736; *Quimby* v. *Quimby,* 175 Ill. App. 367. That the functions of the organization which has ceased to exist have by merger passed to another corporation which is carrying on a similar work has been held not sufficient ground to permit the gift to go to the latter in the absence of a dominant intent to devote it to more general charitable uses. *Wright* v. *Wright,* supra, 336; *Gladding* v. *St. Matthew's Church,* 25 R. I. 628, 57 Atl. 860; *Trustees of Presbyterian Church* v. *Katsianis,* 78 Ind. App. 406, 134 N. E. 684; *Ward* v. *Worthington,* 28 Ohio App. 325, 162 N. E. 714; Zollmann, op. cit., p. 97.

The Restatement, 2 Trusts, § 399, after stating the general principle we have been discussing, adds a comment (k) which states broadly that, if property is given in trust to be applicd for the support of a particular charitable institution and that institution merges with another established for similar purposes, the court will permit the application of the property for the latter unless the settlor manifested an intention to rcstrict his gift to the institution he named; and

that when the institution named has ceased to exist the court will permit an application of the property cy pres unless the settlor manifested an intention to restrict his gift to it. This statement is a definite departure from the general principle governing the application of the cy pres doctrine established by the decisions. In the absence of some indication in the will, read in the light of surrounding circumstances, of a dominant intent to devote the property to charitable uses to which the particular method prescribed is secondary, the statements in the comment should be recognized, not as applications of the doctrine of cy pres or approximation, but as rules of presumed intent. Broadly stated as it is, it would open the door in many cases for the substitution by the court of its own conclusion as to what the testator would have done had he anticipated the cessation of the organization in place of the intent he has himself expressed in the will.

Our own case of *Bridgeport-City Trust Co.* v. *Bridgeport Hospital,* 120 Conn. 27, 179 Atl. 92, on the surface might seem to support the first part of the statement in the comment. The testatrix gave a sum of money to a trust company to pay the income to a certain individual during her life and after her decease to pay the income semi-annually to the First Congregational Church, otherwise known as the North Church Ecclesiastical Society, located in Bridgeport, for the use and purpose of the Society, but if it "shall at any time dissolve or shall abandon the purpose for which it was created," then the fund was to become a part of another fund in which the defendant hospital had an interest. When the testatrix died, the corporate existence of the First Congregational Church was unchanged, although previous to her death it and another ecclesiastical society had united their resources by common consent, held services jointly and expended their

funds for the same religious, charitable and other purposes, the joint enterprise being known as the United Congregational Church. After her death, the United Church was incorporated. The testatrix had, after the joinder of the two organizations, attended the joint religious services conducted by them and subscribed liberally to the joint religious undertaking entered into by them, and she had made a codicil to her will several years after the union, with full knowledge of what was being done but without any change in the provision in question. The controlling question as the case was presented to us was whether the First Congregational Church had dissolved or abandoned the purposes for which it had been created, and we held that there had been no such dissolution or abandonment as the testatrix contemplated, but on the other hand that the practical effect of what had been done was to merge that church into the United Church and to carry out "the very purposes" for which the testatrix contemplated that the money should be used. By her conduct during her life she in effect recognized that church as the intended recipient of her bounty.

*Crum* v. *Bliss*, 47 Conn. 592, is directly contrary to the second part of the statement in the comment. A testator gave one-sixth of the residue of his estate to "the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America, to be applied to the charitable uses and purposes of the said board"; the board was a corporation existing under the laws of Pennsylvania; before the testator's death, by legislative action in New York and Pennsylvania, a new corporation was organized under the laws of New York and took over the property and functions of the Pennsylvania corporation, which became in fact defunct; and we held that the legacy to the named corporation

had lapsed. The case of *Bridgeport Trust Co. v. Marsh*, 87 Conn. 384, 397, 87 Atl. 865, does not hold to the contrary. A testator made a bequest to "The Mount Hermon School for Boys founded by Dwight L. Moody and located not far from Northfield, Mass."; the School for Boys and another corporation known as "The Northfield Seminary" had been merged by legislative action into a corporation known as "The Northfield Schools," and the act provided that all devises or bequests theretofore or thereafter made to them should vest in the new corporation. The act had taken effect before the testator's death and some of the property was conveyed to the new corporation before and some after his death, but no steps had been taken to dissolve the School for Boys or the Seminary. The Northfield Schools continued to carry on the work of the School for Boys in the same manner that it had been formerly carried on and under the same management; and we held that the bequest might properly be paid to the former. This was the direct way to accomplish the same result that would have been brought about had the bequest been paid to the School for Boys and then transferred to the new corporation.

In the will before us there is simply a gift to a named corporation, the Second Unitarian Congregational Society, without any reference to the use to be made of the money. The will did not even establish a charitable trust, but the church would become owner of the money, to be used by it for any of its proper purposes. *Winchester* v. *Cox*, 129 Conn. 106, 111, 26 Atl. (2d) 592. Neither in the will nor in any intrinsic evidence is there any indication of a general intent on the part of the testatrix that the gift should be devoted to a charitable use to which the designation of the church to receive and administer it was secondary. It was simply a gift to a definite religious organization, which

had ceased to exist before any interest vested in it. To authorize the payment to the First Society would be, not to carry out any intention that can be found in the will read in the light of surrounding circumstances, but to make a will for the testatrix, which we cannot do. *Bancroft* v. *Sanatorium Assn.*, 119 Me. 56, 67, 109 Atl. 585; *Merrill* v. *Hayden*, 86 Me. 133, 29 Atl. 949; *Morristown Trust Co.* v. *Morristown*, 82 N. J. Eq. 521, 523, 91 Atl. 736; *Quimby* v. *Quimby*, 175 Ill. App. 367. The Probate Court was in error in ordering the payment of the gift to the First Unitarian Congregational Society.

As already noted, Charles L. Andrews died before the life tenant, and the plaintiff is his sole heir-at-law. This brings us to the question as to the disposition to be made of the property, in view of the fact that the gift to the church has lapsed. While the gift of the remainder to Charles L. Andrews was not in terms expressed to be an absolute gift or one made to him and his heirs, such provisions are not necessary to vest in him an absolute interest. *Burr* v. *Tierney*, 99 Conn. 647, 651, 122 Atl. 454; *Hartford-Aetna National Bank* v. *Weaver*, 106 Conn. 137, 141, 137 Atl. 388. The direction to "pay over" the property to him imports a gift to him. *Eaton* v. *Eaton*, 88 Conn. 269, 275, 91 Atl. 191. It was clearly the intent of the testatrix by these words to vest the title in him absolutely should he survive the life tenant, and they can mean no less because he died before her. The gift to the Second Society, in the event that he died before the life tenant, was in the nature of an executory devise and bequest, and our law is settled that where there is an absolute gift to one person, with a provision that in the event of his death before a certain time another should take by executory devise or bequest, and the latter gift fails the absolute interest in the first donee remains un-

affected and upon his death passes to those who succeed him by right of inheritance. *Cody* v. *Staples*, 80 Conn. 82, 85, 67 Atl. 1; *Shepard* v. *Union & New Haven Trust Co.*, 106 Conn. 627, 636, 138 Atl. 809; *Congregational Home Missionary Society* v. *Thames Bank & Trust Co.*, 127 Conn. 1, 12, 14 Atl. (2d) 626. The plaintiff, being his sole heir-at-law, is, therefore, entitled to receive the residue of the estate, and it should be distributed to her.

The trial court dismissed the appeal upon the ground that as Charles L. Andrews did not survive the life tenant, any interest he had terminated at his death and consequently the plaintiff as his sole heir-at-law was not "aggrieved" by the decree within the meaning of the statute restricting appeals from probate to "aggrieved" persons. General Statutes, § 4990. That this was an erroneous conclusion sufficiently appears from what has been said. The probate decree took from her property to which she is entitled.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal and direct the Probate Court to distribute the residue of the estate to the plaintiff.

In this opinion the other judges concurred.