[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The purpose of this suit is to determine whether the doctrine of approximation is appropriate for the bequest made of the residuary estate in the will of Howard E. Adt. Grace Hospital Society, Inc., the named object of Mr. Adt's bounty is no longer in existence. The parties to this litigation, in addition to the named plaintiff and the named defendant are the Attorney General of the State and Attorney Richard K. Snyder who was appointed administrator d.b.n. — c.t.a. of the estates of Henrietta Adt and Ruth Adt Stephenson by the probate court and was appointed guardian ad litem for the heirs, representatives and creditors of Howard E. Adt by this court. With the exception of a dispute as CT Page 509-A to attorney's fees, the parties have agreed, among themselves, on a distribution of the estate.[1] In suits of this nature, however, their agreement is ineffective without the approval of the court.[2]
 I.
From the evidence presented, the court finds that the facts set forth below were established.
Howard E. Adt, a resident of Woodbridge died on October 14, 1923, leaving a will dated June 24, 1923. The will was duly proved land was admitted to probate by the probate court for the District of New Haven. Article VIII of the will provided that the residue of Mr. Adt's estate would pass to the First National Bank of New Haven in trust during the lines and until the death of his wife Henrietta, his daughter Ruth and his brother Evie. The First National Bank of New Haven was confirmed as trustee by the probate court and qualified and acted as trustee. The named plaintiff Shawmut Bank was successor trustee by merger and court approval to the First National Bank. Recently, Shawmut merged with Fleet National Bank so that, at present, Fleet National Bank is the existing successor trustee.
In article VIII (e) of Howard Adt's will, the testator CT Page 509-B provided that upon the death of the last surviving life tenant, ". . . I give all of the principal fund then in the hands of my said Trustee, together with all unexpended income, to the Grace Hospital Society, of New Haven, Connecticut to be used for the purpose of building a Home and Training School for Nurses. In the event that a Home and Training School shall already have been built at said time, said Grace Hospital Society may, at its option, use said fund in whole or in part for altering, enlarging, repairing or equipping such Home and Training School or in providing a fund for maintenance of the same."
Ruth Adt, who through marriage became Ruth Adt Stephenson, was the last surviving life tenant. She died testate but without issue on December 23, 1990. Howard Adt's will provided no "gift over" provisions or any other manner of distribution of his residuary estate if, for any reason, the bequest to Grace Hospital Society, failed.
Grace Hospital Society was incorporated as a hospital by Special Act No. 412 dated June 12, 1989. Section 8 of the special act provided: "The Grace Hospital Society may at any time unite with the General Hospital Society of Connecticut under contract or otherwise, in any manner which will enable it to furnish homeopathic and eclectic treatment of patients, and to carry on its work in connection with that of the General Hospital Society CT Page 509-C of Connecticut. The General Hospital Society, popularly known as New Haven Hospital, was a previously existing hospital in New Haven having been incorporated by a special act on May 19, 1826.
The charter of Grace Hospital Society was amended on June 19, 1895 by House Joint Resolution No. 414 so that the Society was authorized "to establish and maintain a school for training nurses and grant diplomas." Also enacted on June 19, 1895 was Special Act No. 397 whereby the General Assembly authorized Grace Hospital Society "to establish and maintain a Training School for Nurses for the two-fold purpose of caring for patients in Grace Hospital and of fitting young women for the nursing profession. . . ." Previously, on June 19, 1873, the General Assembly had incorporated the Connecticut Training School for Nurses, one of the earliest nursing schools in the United States. In 1881, the General Hospital Society of Connecticut made one of its buildings available for use by the Connecticut Training School for Nurses.
The number of training schools for nurses in the United States increased from 3 in 1873 to 432 by 1900 and 1,129 by 1910. Most of the training schools were hospital based and service oriented. By using students as providers of service, hospitals were able to reduce the cost of nursing care. In these early schools, the, primary focus was on service rather than education. CT Page 509-D
An increasing number of American universities, however, began to appreciate the importance of nursing education as well as hospital affiliations for medical students. On May 19, 1913, a formal affiliation agreement was entered into by Yale University and the General Hospital Society of Connecticut. On October 23, 1923, pursuant to an agreement among Yale University, the General Hospital Society of Connecticut and the Connecticut Training School for Nurses, the Yale School of Nursing came into existence as a faculty of Yale University. In 1926, the Yale School of Nursing and the Connecticut Training School for Nurses held a joint graduation after which the Connecticut Training School for Nurses stopped admitting students. The Connecticut Training School for Nurses, however, continued its separate existence and used its administrative experience in the development of nursing programs. Cooperative programs for education and training between the Connecticut Training School for Nurses and the Grace Hospital Training School existed before the Yale School of Nursing was opened. These cooperative programs were continued by the Yale School of Nursing.
In 1926, Grace Hospital Society had converted a building on Orchard Street into a dormitory to house 25 nurses and a recreation center. Grace Hospital Society, however, never was able to obtain sufficient funds to build a new nurses' home CT Page 509-E despite repeated references to the need for the same in its annual reports. Grace Hospital Society never had facilities sufficient to house all of the students in the Grace Hospital Training Program.
In 1927, by Special Act No. 465, Grace Hospital Society was authorized to unite or merge with the General Hospital Society of Connecticut. The merger was not carried out because of financial considerations. A consolidation of the two societies did occur in 1945 pursuant to Special Act No. 95. The resulting unit was known as Grace-New Haven Community Hospital.
The former Grace Hospital Buildings located on Chapel Street were sold in 1952 to the State of Connecticut. In the same year, the Grace Education Building was erected in Park Street in close proximity to the Grace-New Haven Community Hospital Complex. The building was erected with funds provided by the sale of the former Grace Hospital buildings and funds turned over to the Grace-New Haven Community Hospital by the Connecticut Training School for Nurses upon effectuation of a merger between the two as permitted by Special Act No. 195 in 1955. The Grace Education Building served as a home and training school for the Grace-New Haven School of Nursing until 1975.
In 1965 Grace-New Haven Community Hospital amended its CT Page 509-F charter to change its name to Yale-New Haven Hospital, Inc. The Grace-New Haven Hospital School of Nursing, as the original Grace Hospital Training Program had come to be known, continued to operate as a hospital based nursing school under the name "Grace-New Haven" for another ten years. The last class graduated in 1975. After the school closed, its records have been retained and requests for information therefrom have been honored by the Nursing Education Department of Yale-New Haven Hospital's Division of Nursing.
The closing of the Grace-New Haven Hospital School of Nursing was indicative of a national trend in nursing education that saw hospital-based diploma programs supplanted by college or university studies leading to an associate or a baccalaureate degree. According to the National League of Nursing, hospital-based diploma programs, in 1990, represented only 10.8% of nursing education programs in the United States. Approximately 56.2% of the programs were at the associate degree level and about 33% awarded the baccalaureate degree.
Howard E. Adt was a successful manufacturer. For many years and until his death he was the president, treasurer and general manager of Geometric Tool Co., a concern that developed and produced specialized tools and had a work force of 300 persons. He was active in the greater New Haven community. Among his CT Page 509-G charitable interests was Grace Hospital Society where he was a member of the board of directors for many years. In the message, of then president Rollin S. Woodruff contained in the 1923 annual report of Grace Hospital Society, Inc., he referred to the death of Howard E. Adt and his bequest, stating: "Concluding a splendid life, Howard Ellsworth Adt, one of our directors, gave expression to his love for humanity in this will. He lived unselfishly and died with only benevolence in his heart. He wanted his work to go on, and so made a practical gift to Grace Hospital — a legacy that will come later on when his obligation to the living whom he loved is completed. What better deed can anyone do than to leave something to Grace Hospital? In his last act his memory is honored."
When Howard E. Adt made his will in 1923, student nurses at Grace Hospital and, indeed, elsewhere were generally young single women in need of housing or at least more attracted to provided housing. When Ruth Adt Stephenson died in 1990, the demographics were quite different. Students were older, often married, sometimes with dependent children or parents. Also men now composed a significant portion of the student-nurse and professional nurse population.
Yale-New Haven Hospital, Inc. as the corporate successor to the Grace Hospital Society does not have a training school for nurses. But Yale-New Haven Hospital is affiliated with Yale CT Page 509-H University's School of Nursing. Yale-New Haven Hospital's Division of Nursing has a Nursing Education Department which with the Yale School of Nursing runs joint programs in nursing education, research, training and development. These programs train and support all levels of nursing practice including licensed practical nurses, registered nurses and nurses with advanced specialties. Advanced and specialized nursing has been part of health care for several decides. Its role has continuously expanded in the last ten years due to the changing role of nursing in meeting health care requirements. The Yale School of Nursing succeeded the Grace-New Haven School of Nursing as occupants of the Grace Education Building on Park Street. In 1995, the Yale School of Nursing moved to new quarters also in close proximity to the Yale-New Haven Hospital Complex.
Even before the merger of the Grace Hospital Society and the General Hospital Society of Connecticut, there was cooperation between the two hospitals and the Yale School of Nursing. One example is the four-month training program in pediatrics provided since 1927 by the Yale School of Nursing for all student nurses in the Grace Hospital program. The Nursing Education Department of Yale-New Haven Hospital, Inc. which, along with the Yale School of Nursing has become the successor-provider of educational courses and training, has about 20 employees and an annual operating budget of $780,000.00. At least one employee is CT Page 509-I a joint appointment with the Yale School of Nursing.
Section 12 of Special Act No. 95 (1945), the consolidating statute, provided that gifts, including legacies, bequests and devises previously made or that, in the future, may be made to either Grace Hospital Society or General Hospital Society of Connecticut would be administered as follows: After and as soon as such consolidation shall become effective all subscriptions, gifts, grants, legacies, bequests and devises which have heretofore been or which may hereafter be made, given or left to either of the constituent corporations in trust or otherwise by any will, instrument of trust or gift or otherwise, for charitable uses or purposes or for corporate purposes, shall be held and administered by such resulting corporation, which is hereby empowered to accept, hold and administer any and all subscriptions, gifts, grants, legacies, bequests and devises which shall be made, given or left to it in trust or otherwise." Thus, it is not the absence of an entity but rather the disappearance of a program that requires consideration of the doctrine of approximation. Yale-New Haven Hospital, Inc., the resulting corporation, does not operate a home and training school for nurses. Neither does the curriculum of the Yale Nursing School nor the living arrangements of its students comport with those of the former hospital-based training schools. Today, the Grace Education Building is being used for purposes CT Page 509-J other than a nurses training school. Moreover, even if the erection of a building or renovation of the Grace Building to serve as a home or dormitory should be deemed advisable, the amount of Howard Adt's bequest valued, as of August 28, 1996, at $1,753,471.29 is inadequate for such an endeavor.
Some other findings have been made that are in addition to the foregoing facts. Those findings appear in the next section of this memorandum.
 II.
As heretofore noted, the parties are in agreement as to the distribution of Howard Adt's estate. Their recommendation is that after payment of a total of $75,000.00 to residuary beneficiaries under the will of Ruth Adt Stephenson, the remainder of Howard Adt's estate be given, by application of the doctrine of approximation to Yale-New Haven Hospital, Inc. The Hospital has promised, if the court approves the settlement, to establish the Howard E. Adt Memorial Scholarship Fund whereby one or more full or partial annual scholarships will be awarded to: "(1) students at the Hospital's academic affiliate, Yale School of Nursing, who are enrolled in a degree program to receive an R.N., Master's Degree or a degree in a field of specialized nursing; and/or (2) practicing nurses at Yale-New Haven Hospital, Inc. who are CT Page 509-K pursuing advanced practice studies in academic programs leading to an advanced practice certification, licensure or degree, established and run jointly by Yale-New Haven Hospital, Inc. and Yale School of Nursing."
The doctrine of approximation or "cy pres", as it is generally known is well-established in Connecticut law. See e.g.Lockwood v. Killian, 179 Conn. 62 (1979); Ministers Missionaries Benefit Board v. Meriden Trust Safe Deposit Co.,139 Conn. 435 (1953). The doctrine applies where a testator has disclosed an intent to bequeath his property to some charitable purpose but, due to changed circumstances, it has become impossible, impractical or illegal to follow his chosen method. Courts will then, as a matter of equity, sanction the use of the testator's property in some other way which will approximate his intent as nearly as may be done. Duncan v. Higgins,129 Conn. 136, 140 (1942).
What is important in any decision concerning the doctrine of approximation is to determine whether the testator's primary, or as some courts phrase it dominant, intent was to benefit a specific charitable purpose or a particular charitable institution. If the latter is found and the institution becomes non-existent before it becomes entitled to the gift, the doctrine of approximation cannot be used. Compare Duncan v. Higgins, supra
CT Page 509-L and Mears v. Conway, 17 Conn. Sup. 319, 321 (1951) with Ministers Missionaries Benefit Board v. Meriden Trust Safe Deposit Co.,supra at 439 and Howood House, Inc. v. Trustees of Donations Benefits, 27 Conn. Sup. 176, 186-87 (1967). In this case, legislation, Special Act No. 95 § 12 (1945), provided that the successor hospital, Grace-New Haven Community now Yale-New Haven, will receive bequests made to the former Grace Hospital Society. But the doctrine of approximation will not apply if Howard E. Adt's primary intention is found to have been to benefit only the Nurses' Training School of the former Grace Hospital Society.
In determining Howard E. Adt's intent, the court must treat his will as a whole and consider the circumstances that were present when the will was executed. Some rules of construction exist that will aid in this review. Where a testator in his will, has made a bequest to a charitable entity to be applied to a particular charitable purpose, it will be inferred that use of the bequest for the designated purpose was the testator's primary or dominant intention and that the choice of the organization to make it was secondary. Duncan v. Higgins, supra at 140; HowoodHouse. Inc. v. Trustees of Donations Benefits, supra at 184 citing 4 Scott on Trusts § 397.3. See also Restatement (Second) Trusts § 3990. If after several smaller bequests, the testator's ultimate bequest was for charitable purposes, the CT Page 509-M extent of the testators Generosity has been held to be indicative of a general intention to benefit charity. Hartford National Bank Trust Co. v. Oak Bluffs First Baptist Church, 116 Conn. 347,354 (1933). The absence of a "gift over" should something happen to the designated charity is considered to be evidence of a general charitable intent. CBT v. Johnson Memorial Hospital,30 Conn. Sup. 1, 8 (1972). Howard Adt's will can be construed consistently with these rules. His bequest to the Grace Hospital Society was for the purpose of building a home and training school or for improving and maintaining the home and training school should it have been erected while a life tenant was still living. He made several of his bequest smaller pecuniary legacies four of them being to designated charities and then reserved his residuary estate for his immediate family during their liens with the ultimate residue to the Grace Hospital Society. There was no "give over" to an individual or to another charity if something happened to Grace Hospital Society.
Further, reference has already been made to the annual messages of the President of the Grace Hospital Society when Howard E. Adt was a member of the board of directors. The messages can be reasonably assumed to be culminations of matters discussed at meetings of the board. They advocated not only the need for a building at Grace Hospital but also bemoaned the general conditions under which student nurses in the United CT Page 509-N States lived and trained. From all of the facts that have been found, the court concludes that Howard E. Adt's primary intention in making the bequest of the residue of his estate was to benefit nursing education and to make the nursing profession more attractive. Application of the doctrine of approximation, therefore, is appropriate.
With one exception, the court approves the parties' plan for a perpetual Howard E. Adt Memorial Scholarship Fund. The exception is that recipients of scholarships who are practicing nurses at Yale-New Haven Hospital should not be limited to courses established and run jointly by Yale-New Haven and Yale Nursing School. Surely there must be courses leading to a certificate that are conducted solely by the Nursing Education Department at the Hospital. It must be remembered that Howard E. Adt's primary interest was in the practical education and training of nurses. The second category of potential scholarship recipients is therefore changed to read: "practicing nurses at Yale-New Haven Hospital, Inc. who are pursuing advanced practice studies in academic programs leading to advanced practice certification, licensure or degree which programs shall be sponsored by the Nursing Education Department and may be run jointly by Yale-New Haven Hospital, Inc. and Yale School of Nursing.
III. CT Page 509-O
Since this action was brought by the successor-trustee under the will of Howard E. Adt, each of the parties is entitled to be paid from the estate a reasonable sum for expenses and counsel fees as the court, in its discretion, deems equitable. Gen. Stat. § 52 Fleet National Bank f/k/a Shawmut Bank, as trustee requests counsel fees of $42,684.14 and expenses of $1,005.15. Yale-New Haven Hospital, Inc. requests counsel fees of $40,472.10 and expenses of $5,989.02. No request for fees or expenses was received from Attorney Richard K. Snyder in his capacity as Administrator d.b.n. — c.t.a. of the Estates of Henrietta Adt and Ruth Adt Stephenson. Attorney Snyder in his capacity as Guardian Ad Litem for the heirs, representatives and creditor of Howard E. Adt, however, requests, pursuant to Gen. Stat. § 45a-132, the sum of $24,675.00 for services and $1,957.98 for costs. Section 45-132 (g) provides for reasonable compensation to be paid as a part of, the expenses of administration when pursuant to its provisions, a guardian ad litem is appointed.
Each request for fees and expenses is supported by an affidavit detailing counsel's activity. In several instances, the affidavits report communications between counsel and persons whose relationship to the case is unknown to the court. The affidavits are complex because Tyler, Cooper Alcorn, attorneys for the Trustee and Wiggin Dana, attorneys for Yale-New Haven CT Page 509-P Hospital, Inc., are large firms and each appears to have had several lawyers assigned to the case. Except for the Attorney General, there were no objections to any request for fees or expenses.
The Attorney General has asked that all counsels' hourly rates not exceed $200.00 and that the court review the affidavits to determine whether amounts allocated to intra-office conferences are not already built into an attorney's hourly rate.
In 1992, Bank of Boston Connecticut v. Brewster,42 Conn. Sup. 474, 501 et seq (1992) aff'd. 32 Conn. App. 217 (1993) collected cases and stated the law regarding attorneys' fees in situations governed by §§ 52-251 and 45a-132. The following paraphrasings from Bank of Boston Connecticut v. Brewster are relevant to the present case. Section 52-251 begins with the words "[i]n any action". An action is commenced on the date of service of the writ upon a defendant. An allowance for counsel fees and expenses incurred prior to the start of is not authorized by the statute. For this reason, no attorney's fee can be awarded for activity prior to January 19, 1993. Even where there has been no objection to the amount of the attorney's fee requested, the court has the responsibility to award only a fee that is reasonable. Id. at 506. An applicant for an attorney's fee is only entitled to an award for time "reasonably expended" CT Page 509-Q which is not necessarily equal to the time reported to have been actually spent. Id. at 504.
With the foregoing principles and the Attorney General's requests in mind, the court has decided to establish $250 per hour as the upper limit of counsel's compensation. This cap has been selected because it is in line with the court's general knowledge as to counsel fees in this vicinity. Also, the trial itself was predicated upon the parties agreement although some difficulty may have been experienced with pretrial motions and in the parties reaching their agreement. The reasonable attorney's fee awarded by the court to Fleet National Bank for work from January 19, 1993 to the present time is $31,605.34 plus expenses of $1,005.15 for a total of $32,610.00.
Placing a limit of $250.00 per hour on an attorney's hourly charge results in a reasonable attorney's fee of $26,961.90 for the Yale-New Haven Hospital, Inc. With respect to the Hospital's expenses, the court has no quarrel with the amount of $334,021 reported as miscellaneous expenditures. In the court's opinion, however, the amount of $5,655.00 sought for Attorney Cavenaugh as an expert witness is anything but reasonable. Attorney Cavenaugh is a partner in Wiggin Dana, the law firm representing Yale-New Haven Hospital. His work on the file has been included in the calculation of a reasonable attorney's fee. In the courtroom, he CT Page 509-R testified informatively about the histories of the Grace Hospital Society and its training program for nurses, the General Hospital Society of Connecticut, the Connecticut Training School for Nurses and the Yale Nursing School. An appropriate teacher from one of the local colleges or someone from the New Haven Colony Historical Society, however, could have and would have given the same information for less than $2000.00. Only $1500.00 is allowed for Attorney Cavenaugh as an expert witness. The amount awarded to Yale-New Haven Hospital, Inc. is $28,795.92 of which $26,961.90 is for a reasonable attorney's fee and $1,834.02 is for expenses.
The final application to be considered is that of Attorney Richard K. Snyder who was appointed Guardian Ad Litem on April 5, 1993. Attorney Snyder requests $24,675.00 as a reasonable attorney's fee based upon 98.70 hours of work at $250.00 per hour. He also requests reimbursement for cash disbursements of $738.00 to Anne Marie C. Paone-Mullin; $1,219.98 to Andrew Ehrgood and $10.00 paid for shipping research materials to Ehrgood. From the 98.70 hours reported, the court subtracts 4.35 hours that occurred prior to his appointment and 7.50 hours that he has reported for conferences with either Paone-Mullin or Ehrgood who apparently were his researchers. Thus Attorney Snyder is allowed $21,750.00 as a reasonable attorney's fee. The court declines to reimburse his payments to outsiders for research on CT Page 509-S issues relevant to this case.
 IV.
In sum, the court, with one modification approves the agreement of the parties. Fleet Bank as Trustee shall pay $75,000.00 to Attorney Richard K. Snyder as Administrator d.b.n. — c.t.a. of the Estate of Ruth Adt Stephenson, $32,610.00 to itself for a reasonable attorney's fee and expenses, $28,795.92 to Yale New Haven Hospital, Inc. for a reasonable attorney's fee and, expenses and $21,750.00 to Attorney Snyder as Guardian Ad Litem. The money then remaining in the Estate of Howard Adt shall then be turned over to the Yale-New Haven Hospital so that the Howard E. Adt Memorial Scholarship can be established.
A separate order wherein the obligations of the parties are fully set forth has been filed contemporaneously with this memorandum.
Jerrold H. Barnett, Judge