[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action, the plaintiff, Town of Cornwall ("Town"), seeks the application of the equitable doctrine of approximation to permit the defendant The Cornwall Library Association (Library Association) to release its interest in certain real property and CT Page 2431 a building thereon, presently called the Town Hall and Library Building located on the east side of Pine Street in Cornwall. Pursuant to General Statutes § 3-125, the Attorney General is a party to this action.
In its December 1, 1999, amended complaint, the Town alleges that on October 5, 1908, John E. Calhoun of Cornwall transferred by deed a parcel of land and buildings in Cornwall to three individual trustees for the following uses and benefits:
 To hold, manage and control and to perpetuate the building on said premises under the name of the Cornwall Library; To provide and appropriate the South wing of said The Cornwall Library Building to the Cornwall Library Association for its benefit and use to keep and preserve the books, manuscripts, records and property of said Cornwall Library Association and for the use of its officers and members under the rules and regulation of said The Cornwall Library Association, to keep the same in proper condition respecting light, heat and all things necessary for the proper use of said Library Association without charge of any kind to said Library Association.
As alleged in the complaint, the deed further provided:
 Also to provide and furnish to the Town of Cornwall the use of the rooms for the office of the Selectmen, Town Clerk and all other officers of said Town, and vault connected therewith to safely and securely keep the records of said Town of Cornwall and to furnish the proper Town officers with the combination of the locks of said vault, and fair and proper access to and from said room and vault for the transaction of business; also to furnish the above described room and vault for the use of the Judge of Probate for the District of Cornwall and for keeping the files and records pertaining to that office; also to furnish the main or principal room or hall of said Library Building for the use of the Town of Cornwall for all its Town and Elector's meetings and to provide facilities for voting therein in accordance with the laws of the State of Connecticut as the same may exist from time to time and for the sessions of Justice Courts, or other Courts, hearings of committees and any judicial proceedings which may be held in said Town of Cornwall; such areas to be furnished by said Trustee for said Town free of any charge to said Town in lieu of any or all taxes and for so long as no taxes are assessed, claimed or required upon or against the said property CT Page 2432 herein conveyed to said Trustees. . . .
The complaint further alleges that the above gift constitutes as charitable gift for educational and municipal purposes. In further allegations, the complaint states that on March 14, 1958, the Superior Court entered judgment permitting the transfer of the land and building to the Town subject to the continuance of the original trusts as set out in the deed. By quit claim deed dated April 1, 1958 and recorded May 10, 1958, the Town became the owner of the land and buildings, specifically the town hall and library building that is the subject of this action. In consideration for this conveyance, the town agreed to the following:
 [T]o hold, manage; maintain in good repair and perpetuate the building on said premises known as "The Cornwall Library" and to provide and appropriate the SOUTH wing of said Building and the former office of the Town Clerk, now used as a reference room, to The Cornwall Library Association for its benefit and use to keep and preserve the books, manuscripts, records and property of said Cornwall Library Association and for the use of its officers and members under the rules and regulations of said Cornwall Library Association. The Town of Cornwall further covenants and agrees that the maintenance and good repair of said building shall include all plumbing, heating and lighting facilities and equipment; and agrees to keep said building properly insured, both as to fire and extended coverage, so-called.
Both the defendant Library Association and the Attorney General have admitted the above allegations of the complaint. Accordingly, those facts have been established. Jones DestructionInc. v. Upjohn, 161 Conn. 191, 199 (1971); Commissioner of PublicWorks v. Middletown, 53 Conn. App. 438, 444, cert denied,250 Conn. 923 (1999). As to the remaining allegations, the court heard evidence at trial, which was held on January 31, 2000.
In paragraph ten, the amended complaint alleges that the defendant Library Association has determined that it is impossible or impracticable for it to continue its use of the reserved area of the building, known as the south wing, to carry out the charitable purpose of providing library services to the public and residents of Cornwall. The court heard testimony from David Grossman, vice president of the Board of Trustees of the defendant Library Association regarding the space limitations of CT Page 2433 the south wing, which houses the library. He testified that the south wing is only 850 square feet. Books are stored in the areas reserved for town use; the library is essentially inaccessible to persons with disabilities. Photographs were admitted into evidence which show the severe space problems and overcrowding. The court finds that the plaintiff has proved the allegations of paragraph 10 of its complaint.
In paragraph 11 of the amended complaint, the plaintiff alleges that the town wishes to use the south wing for municipal services, free of the covenant to provide and appropriate that space to the use of the library. The court heard testimony to this effect from Gordon Ridgeway, first selectman of the town of Cornwall who testified that the town hoped to expand its services and offices into the south wing.
The remaining allegations of the complaint state that the town and the library have reached an agreement wherein the town agrees to pay the library association $250,000 for its interest in the south wing; that the town will pay the library association $17,000 yearly for fifteen years; that the library association will raise at least $250,000 in matching charitable gifts to acquire a site and construct a new library building. The court heard testimony from both Ridgeway and Grossman that this agreement has been reached and its terms met.[1] The agreement was introduced into evidence. The court further considered evidence of the site that had been acquired by the Library Association; the plans for the new library building and the budget prepared for the construction and maintenance of the new library building.
In its claim for relief the town requests that the court apply the doctrine of approximation to permit the Library Association to convey its interest in the real property and building to the Town in exchange for the consideration and subsidy from the Town and to relieve the town of its obligation to the Library Association set forth in 1958 quit claim deed. After trial, both defendants join the plaintiff in requesting this relief.
Both case law and statutory law guide the court in this matter. "It is now certain that the Superior Court, as a court of equity, possesses the power to carry out the general intent of the donor of a testamentary charitable trust, when clearly manifested, though the particular form or manner pointed out by the testator cannot, because of changed conditions, be followed." Newton v.CT Page 2434Healey, Attorney General, 100 Conn. 5, 10 (1923). Under General Statutes § 45a-514, "[a]ny charitable trust or use created in writing or by deed by any resident of the state . . . shall forever remain to the uses and purposes to which it has been granted according to the true intent and meaning of the grantor and to no other use." Certainly, the trust here is a charitable trust. See Bridgeport Public Library Reading Room v. BurroughsHome, 85 Conn. 309 (1912), where the Supreme Court of Errors determined that the court and not the legislature had the power to administer the charitable trust relating to the Bridgeport public library to adapt to the changing conditions and lapse of time. That a trust involving a public library is a charitable trust is supported by case law and other authorities. For example, in Bannon v. Wise, 41 Conn. Sup. 469, 475 (1990), aff'd,217 Conn. 457 (1991), the court noted,
 A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. The enforcement of charitable uses cannot be limited to any narrow and stated formula. As has been well said, it must expand with the advancement of civilization and the daily increasing needs of men.
(Internal quotation marks omitted.)
William Shakespeare also provides authority for the proposition that a public library is an appropriate subject of a charitable trust. That Prospero's power later demonstrated emanated from his library makes the following a powerful if more subtle literary affirmation.
 Knowing I lov'd my books, he furnished me, From mine own library with volumes that I prize above my dukedom. The Tempest, I, ii
The doctrine of approximation is applied within the confines of the statutory mandate of General Statutes § 45a-514. Lockwood v.Killian, 179 Conn. 62, 67 (1979). This doctrine allows the court to exercise its powers of equity to change the methods of CT Page 2435 administration of a charitable trust or use when necessary. InDuncan v. Higgins, 129 Conn. 136, 140 (1942), Chief Justice Maltbie explains,
 The doctrine [of approximation] applies in situations where a testator has evidenced a dominant intent to devote his property to some charitable use but the circumstances are such that it becomes impossible to follow the particular method he directs, and the courts then sanction its use in some other way which will, as nearly as may be, approximate his general intent.
The court went on to say that the doctrine can only be applied "where the court finds . . . a general intent to devote the property to a charitable use, to which the intent that it go to the particular organization named is secondary." Id.
The parties claim, and the court agrees, that the dominant purpose of the trust here us to provide the services of a public library and other benefits to the town of Cornwall. As shown by the evidence, the specific property designated by the trust for this purpose can no longer fulfill that purpose.[2] As evidenced by the documents, the donor Calhoun made a significant contribution in his donation of land and building to this charitable purpose; no gift-over provision to other charities is contained in the trust, nor is there a reversionary clause to direct the property back to the donor or his heirs under any circumstances. Connecticut Bank Trust Co. v. Johnson MemorialHospital, 30 Conn. Sup. 1, 8 (1972).
The proposed application of the doctrine of approximation continues to serve the purpose behind this charitable trust. "[T]he necessity of preserving and effectuating the general charitable purpose of the testator justifies the substitution of a method which seems to be as nearly approximate as existing condition will permit." Newton v. Healey. Attorney General, supra, 100 Conn. 11. The proposed library facility will more adequately serve the public, and the town offices will appropriately fill the town hall building. To preserve and effectuate the charitable purpose set forth in the Calhoun trust, the court grants the requested relief.
In accordance with the above, under the doctrine of approximation, the court enters judgment as follows:
1. The Library shall convey its interest in the real property CT Page 2436 and building described in the quit claim deed recorded May 10, 1958, in volume 40, page 333 of the Cornwall land records to the town of Cornwall in exchange for the consideration and subsidy from the town as set forth below:
 a. The town will pay the library $250,000 in compensation for its surrender, release and quit claim of its interest in said building payable as follows:
 1. $50,000 upon the library's signing a contract to purchase a new site;
 2. $200,000 upon the library's award of a construction contract to build a new library.
 b. The town will pay the library $17,000 per year for fifteen (15) years in consideration of the library's surrender, release, and quit claim of its right reserved in said quit claim deed to the town, for the maintenance of the south wing in said building and as a town contribution to the future costs of the library's operations. Said payments to be paid quarterly:
2. The town is relieved of its obligations to the library as set forth in the quit claim deed dated April 1, 1958, recorded May 10, 1958 in volume 40, page 333 in the Cornwall land records.
3. No costs shall be taxed.
The court commends counsel on their thoughtful and well written memoranda.
DIPENTIMA, J.